UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| COACH, INC., and<br>COACH SERVICES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>3D DESIGNERS INSPIRATIONS, DOES 1<br>Through 100, and MAZHAR NADEEM,<br>d/b/a 3D Designers Inspirations,<br><br>Defendants. | Case No. 4:11-cv-04092-SLD-JEH |

## ORDER

Plaintiffs Coach, Inc., and Coach Services, Inc., (collectively "Coach") allege that Defendants 3D Designers Inspirations and its principal, Mazhar Nadeem (collectively "3D"), sold goods bearing counterfeit Coach trademarks.[1] Default has been entered against 3D, and Coach now moves for a default judgment awarding it injunctive relief and statutory damages pursuant to the Lanham Act, 15 U.S.C. §§ 1116–17. For the following reasons, Plaintiff Coach's Motion for Default Judgment, ECF No. 43, is GRANTED.

## BACKGROUND[2]

**I. Facts**

Coach manufacturers and sells leather and mixed material products such as handbags, wallets, accessories, eyewear, footwear, jewelry, and watches. Coach owns several United States Federal Trademark Registrations, trademarks that are so widely recognized as to qualify as "famous marks" under 15 U.S.C. § 1125(c)(1). Mazhar Nadeem operates 3D, which sells

---

[1] Coach voluntarily dismissed all claims against Does 1 through 100.  Stip. Dismissal, ECF No. 27.
[2] Because all of a plaintiff's well-pleaded allegations related to liability are taken as true in a default judgment, *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007), the material in this section is drawn from the Complaint, ECF No. 1, except where otherwise indicated through a specific docket reference.

accessories such as purses, wallets, and satchels out of its store in South Park Mall in Moline, Illinois.

On or about August 12, 2011, an investigator hired by Coach entered the 3D location in South Park Mall. The investigator noted that 3D had approximately 10 to 15 products depicting Coach trademarks, including purses, wallets, and satchels, on display in a locked glass cabinet along with other trademarked items. The investigator purchased, for $39.99 and $29.99, respectively: (1) a blue satchel-type purse bearing at least two different registered Coach trademarks; and (2) a multi-colored wallet bearing at least three different registered Coach trademarks. Dayanara Perez, Coach's Intellectual Property Coordinator, examined images of these items on August 25, 2011, and determined that the items appeared to be counterfeit for several reasons including: 3D Designers is not an authorized Coach retailer; Coach did not manufacture those items in those particular design patterns and colors; the satchel's lining differed from the type Coach uses; the Coach trademarks are incorrect or inconsistent with those found on authentic merchandise; the quality and craftsmanship fell below Coach's standards; and Coach's suggested retail price for such a satchel and wallet are $128.00 and $198.00, respectively. Perez Aff., ECF No. 43-2.

Coach has not licensed or authorized 3D to use Coach trademarks, whose fame, strength, and associated good will 3D is aware of. Coach maintains that 3D counterfeited and infringed on its trademarks "negligently and/or knowingly and intentionally, with reckless disregard or willful blindness to Coach's rights, or with bad faith" in order to profit from the reputation of Coach products. Further, Coach claims, consumers are likely to be deceived into believing there is a connection between 3D's products and Coach. Finally, Coach believes 3D plans to continue to sell the trademark infringing products.

## II. Procedural History

On October 11, 2011, Coach filed an eleven-count complaint against 3D alleging trademark infringement, trade dress infringement, trademark dilution and counterfeiting under the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1117, 1125(a), (c); direct and contributory copyright infringement under the United States Copyright Act, 17 U.S.C. § 501; trademark infringement, unfair competition and unjust enrichment under Illinois common law; trademark dilution under Illinois common law and the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/65; and unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505. On December 22, 2012, 3D filed an answer.

On July 5, 2013, 3D's attorney, Steven Balk, filed a motion to withdraw, claiming he had lost contact with 3D, making further representation impossible. Defs.' Mot. Withdraw as Att'y, ECF No. 17. On July 23, 2012, Balk withdrew his motion on the grounds that 3D had re-established communication. Defs.' Mot. Withdraw Mot. 19, ECF No. 19. On October 12, 2012, the Court granted a motion to compel production by Coach, noting that Coach had served 3D with written discovery requests and a request for admission in May 2012, and 3D failed to respond by both the original deadline as well as a second, extended deadline the Court granted. Oct. 12, 2012 Order 1–2, ECF No. 23. The Court awarded Coach attorney's fees for the motion, held that all facts in Coach's Requests for Admission would be deemed admitted by 3D for the purposes of this litigation, and ordered 3D to respond to Coach's other discovery requests by October 22, 2012. *Id.* at 2. In its Requests for Admission, Coach had requested that 3D admit to selling products bearing counterfeit Coach trademarks, specifically the purchased satchel and wallet, despite knowing that they were inauthentic and that such activity was therefore unlawful. Pls.' Mot. Default J., Ex. 1, ECF No. 43-1.

3

On October 12, 2012, Balk again moved to withdraw, claiming he had again lost contact with his clients. 2d Mot. Withdraw as Att'y, ECF No. 24. The Court scheduled a hearing on this motion, as well as the Court's own motion to find 3D in default, for November 21, 2012. At that hearing, Coach said the parties had reached a settlement and Balk withdrew his motion to withdraw. The parties filed a stipulation of dismissal on December 20, 2012. However, Coach moved to reinstate the action or enforce the settlement agreement on January 4, 2013, claiming that 3D had failed to pay the first of six installments due under the settlement agreement, and that Balk failed to respond to Coach's efforts to discuss the matter. At a March 6, 2013 hearing, the Court granted Coach's request to reinstate its suit, granted Balk's third request to withdraw as attorney, and gave 3D thirty days to obtain new counsel or continue pro se. At an April 8, 2013, the Court denied 3D's request for more time to obtain counsel and ordered the parties to submit a proposed scheduling order. Nadeem did not answer several attempts by the Court to include 3D in a May 8, 2013 Rule 16 Scheduling Conference, at which the Court set a deadline of May 17, 2013, for 3D to respond to Coach's written discovery requests.

On October 21, 2013, Coach moved for entry of default, stating that 3D had never responded to its discovery requests; indeed, Coach claimed it had been unable to contact Nadeem since May 2013. Pls.' Mot. for Lv. to File Mot. Entry Default, ECF No. 39. Coach mailed notice of this motion to 3D on October 21, 2013. Cole Aff., ECF No. 40. On December 5, 2013, the Court entered default, finding that 3D's failure to abide by the settlement agreement, respond to discovery requests, or even keep in contact with its own attorney, indicated that "Nadeem and his company have demonstrated a willful refusal to proceed with the defense of this litigation." Dec. 5, 2013 Order 4–5, ECF No. 42. On December 17, 2013, Coach filed the instant motion for a default judgment. Two days later, on December 19, 2013, 3D requested an extension of time

"[d]ue to holidays" to find new counsel and respond to the motion for default judgment. Defs' Mot. Ext. Time, ECF No. 44. The Court extended the response deadline until January 21, 2014, warning 3D that this would be the last extension it received due to its inability to timely retain counsel. Accordingly, the Court denied 3D's request for another extension on January 21, 2014. 3D has made no further attempt to defend its interests since then.

In its Motion for Default Judgment, Coach requests that the Court (1) enter final judgment finding that 3D willfully engaged in trademark counterfeiting under the Lanham Act, (2) enter a permanent injunction enjoining 3D from infringing Coach's trademarks, and (3) award Coach $800,000 in statutory damages pursuant to 15 U.S.C. § 1117(c)(2). Pls.' Mot. Default J. 4, 6, 15, ECF No. 43. Coach requests no relief under its state law claims.

## ANALYSIS

### I. Legal Standard

Default is entered when a party has failed to appear or otherwise defend. Fed. R. Civ. P. 55(a). A default judgment establishes, as a matter of law, that defendants are liable to a plaintiff on each cause of action alleged in a complaint. *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Breuer Elec. Mfg. Co. v. Tornado Sys. of Am., Inc.*, 687 F.2d 182, 186 (7th Cir. 1982). The well-pleaded allegations of the complaint relating to liability are taken as true upon default. *Dundee Cement Co.*, 722 F.2d at 1323. Allegations regarding the amount of damages, by contrast, are not assumed to be accurate. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (citing *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004)). The Court must conduct an inquiry to determine the amount of damages with reasonable certainty, *id.*, and must hold a hearing concerning damages unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the

documentary evidence or in detailed affidavits," *Dundee Cement*, 722 F.2d at 1323 (collecting cases). Further, in accounting for damages, the Court may not award relief different in kind or exceeding in amount what the plaintiff demanded in the complaint. Fed. R. Civ. P. 54(c).

Trademark infringement and counterfeiting are prohibited under 15 U.S.C. § 1114(a). The Lanham Act prohibits the use, without the registrant's consent, of a copy, counterfeit, or imitation of a registered trademark in connection with the advertising or sale of goods or services where such use "is likely to cause confusion, or cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To prove trademark infringement, a plaintiff must show that (1) its marks are distinctive enough to be worthy of protection and (2) the defendant's use of those marks is likely to cause consumers to be confused as to the source of the product. *Nepost Industrie B.V. v. PFE Intern., Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citing *Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496–97 (7th Cir. 2001)). A counterfeit mark is defined as "a spurious mark that is identical with, or substantially indistinguishable from," a registered mark. 15 U.S.C. § 1116(d)(1)(B)(ii).

Where the Lanham Act violation is use of a counterfeit mark, a plaintiff may elect to seek statutory damages rather than damages in the amount of its loss or the defendant's gain. 15 U.S.C. § 1117(a), (c). The amount of statutory damages is "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." *Id.* § 1117(c)(1). If the court finds that the defendant willfully used the counterfeit mark, the court may award up to $2,000,000 per counterfeit mark per type of good or service. *Id.* § 1117(c)(2). Willful infringement occurs when a defendant knowingly and intentionally, or with reckless disregard or willful blindness to the plaintiff's rights, infringes a trademark; it may also be inferred from a failure to defend in a suit for trademark infringement.

*See, e.g.*, *Coach, Inc. v. Pure MLK Last Stop, Inc.*, No. 12-cv-2254, 2013 WL 5888139, at *1–2 (C.D. Ill. Nov. 4, 2013) (citing *Lyons P'ship, L.P. v. D&L Amusement & Entertainment, Inc.*, 702 F. Supp.2d 104, 117 (E.D.N.Y. 2010)); *Dr. JKL Ltd. v. HPC IT Educ. Cntr.*, 749 F. Supp.2d 1038, 1050 (N.D. Cal. 2010).

Taking copyright infringement principles as a guide, courts apply the following factors to determine statutory damages for trademark infringement: (1) the defendant's expenses saved and profits reaped; (2) the plaintiff's lost revenue; (3) the value of the trademark; (4) general deterrence; (5) the willfulness of the defendant's conduct; (6) the defendant's cooperation in providing records from which to determine the value of the infringing products; and (7) specific deterrence of the defendant. *Pure MLK Last Stop, Inc.*, 2013 WL 5888139, at *2 (citing *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003)). "Per type of goods" in § 1117(c) does not mean "per individual item" with the counterfeit mark. *Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 698 (7th Cir. 2009). Further, statutory damages "should represent some approximation of actual damages." *Coach, Inc. v. Treasure Box, Inc.*, No. 3:11CV468-PPS, 2014 WL 888902, at *4 (N.D. Ind. Mar. 6, 2014) (citations omitted); *see, e.g.*, *Adobe Sys., Inc. v. Tilley*, No. C 09-1085, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010) (noting that courts consider whether plaintiff's statutory damages request bears a "plausible relationship" to actual damages) (citation omitted).

The Lanham Act also authorizes injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent further trademark violations. 15 U.S.C. § 1116(a). To obtain an injunction, a plaintiff must demonstrate: (1) it suffered an irreparable injury, (2) remedies available at law are inadequate, (3) the balance of hardships between the plaintiff and defendant warrants equitable relief, and (4) an injunction would not

disserve the public interest. *e360 Insight*, 500 F.3d at 604 (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

**II. Analysis**

**A. Liability**

The same reasons justifying the entry of default on December 5, 2013, justify granting Coach default judgment. Since May 2013, 3D has only participated in proceedings by requesting extensions of time. Despite receiving a significant extension of time to obtain counsel and, with or without counsel, to respond to Coach's motion for default judgment, 3D has done neither in nine months. Coupled with its record of evading discovery requests, failing to comply with the settlement agreement, and skipping the scheduling conference, 3D's most recent inaction further indicates its willful refusal to defend itself in this case.

The allegations in Coach's complaint are therefore taken as true as far as 3D's liability is concerned. *Dundee Cement Co.*, 722 F.2d at 1323. Coach's allegations establish that 3D used counterfeit Coach marks, as defined by 15 U.S.C. § 1116(d)(1)(B)(ii) in the sale of goods in violation 15 U.S.C. § 1114(1)(a). Taken as true, Coach's allegations establish that its trademarks are registered and highly distinctive, and that 3D's use of them was likely to confuse or deceive consumers into believing 3D was selling authentic Coach goods. *Nepost Industrie B.V.*, 403 F. Supp. 2d at 684. Moreover, 3D's willful use of counterfeit trademarks is both established through the unanswered Requests for Admission that the Court has deemed 3D to have admitted, *see* Pls.' Mot. Default J., Ex. 1, and inferred from its failure to defend in this case, *Dr. JKL Ltd.*, 749 F. Supp.2d at 1050. 3D is therefore liable for willful trademark infringement and counterfeiting under 15 U.S.C. § 1114(a). The only task remaining for the Court is to determine

whether Coach's requested relief is supported by the facts alleged in the Complaint and its affidavits. *See e360 Insight*, 500 F.3d at 604.

### B. Monetary Relief

As a preliminary matter, the Court does not find that it is necessary to hold a hearing to ascertain Coach's claimed damages. A hearing is not required if, as here, "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement*, 722 F.2d at 1323. Coach has elected statutory damages, and §1117(c) derives such damages based on the number of counterfeit marks per type of good or service sold or offered for sale. The affidavit of Coach's intellectual property coordinator and 3D's deemed admissions establish that two types of counterfeit Coach goods—handbags and wallets—bearing multiple Coach marks apiece are at issue. Pls.' Mot. Default J., Ex. 1; Perez Aff. Ignoring the allegations in its Complaint and Motion for Default Judgment, Coach's documentary evidence does not establish how many more than one mark each item bore. However, a hearing is not necessary to determine this figure because Coach only argues for the Court to credit each item with two counterfeit marks. *See* Pls.' Mot. Default J. 13. Further, 3D's deemed admissions establish that its Lanham Act violation was willful, indicating that the $2,000,000 damages cap per mark of § 1117(c)(2) applies.

As noted, Coach argues for $200,000 per each of two counterfeit marks on the satchel and wallet its investigator bought from 3D, for a total award of $800,000. Pls.' Mot. Default J. 13. Coach argues that this request is reasonable because it represents only a tenth of the maximum amount available due to 3D's willful violation. *See id.*

In *Coach, Inc. v. Treasure Box, Inc.,* another district court in the Seventh Circuit analyzed four other statutory damages awards Coach obtained against small-scale retailers of wallets,

9

handbags, and similar goods bearing counterfeit Coach trademarks. *See Treasure Box, Inc.*, 2014 WL 888902, at *3 (citing *Coach, Inc. v. Paula's Store Sportwear LLC*, No. 13-3263, 2014 WL 347893 (D.N.J. Jan. 31, 2014); *Coach, Inc. v. Sexy Fashion*, No. CV 12-05713, 2013 WL 3233393 (C.D. Cal. June 25, 2013); *Coach, Inc. v. Becka*, No. 5:11-CV-371, 2012 WL 5398830 (M.D. Ga. Nov. 2, 2012); *Coach, Inc. v. Fashion Paradise, LLC*, No. 10-4888, 2012 WL 194092 (D.N.J. Jan. 20, 2012)). *Treasure Box* found that the courts valued the Coach marks between $2,000 and $30,000 per mark. *Id.* at *4. Balancing the circumstances at issue there—infringing products valued collectively at less than $3,000; the demonstrated willfulness of the defendants; no indication that the defendants thwarted Coach's discovery efforts; the Court's observation that small-scale retailers would be deterred from trademark infringement by awards much less than the $1.5 million Coach requested; and the fact that the defendant retail store had closed after only three months in operation and therefore was "beyond deterrence"—*Treasure Box* selected a value at the lower end of the range, awarding Coach $3,000 per counterfeited mark for a total amount of $45,000. *See id. Fashion Paradise*, which had awarded $30,000 per mark for a total of $450,000, did so in part based on the defendant's "repeated unlawful conduct." 2012 WL 194092, at *8 & n.3. The *Fashion Paradise* defendant had default judgment entered against it in an earlier case for infringing Coach trademarks; the fact that it persisted in its infringing behavior showed that the $94,454.30 in damages awarded against it the first time was an insufficient deterrent. 2012 WL 194092, at *8 & n.3.

Due to the lack of statutory signposts to help the Court navigate the vast discretionary territory between $1,000 and $2,000,000 per mark, the Court determines its bearings by reference to *Treasure Box* and its analysis of statutory damages in similar-scale Coach trademark cases. Many of the mitigating factors in *Treasure Box* and the Coach cases it cites are present

10

here. For example, nothing suggests that 3D's operation includes more than the South Park Mall location, or that it engages in Internet sales. *See Fashion Paradise*, 2012 WL 194092, at *8 & n. 2. While 3D's refusal to cooperate in discovery prevents Coach from ascertaining the full extent of its counterfeiting, the Complaint only alleges that the investigator witnessed 10 to 15 potentially fake Coach items on display, and Coach's evidence establishes only that 3D sold two items bearing counterfeit Coach trademarks. 3D sold these items for $30 to $40, and similar authentic Coach items are valued from $130 to $200. To award Coach 1,000 times the highest value in this range per mark—not even per item—would exponentially exceed any approximation of the value of merchandise conceivably at stake. *See Treasure Box, Inc.*, 2014 WL 888902, at *1. Moreover, many federal courts have found that sums far smaller than $200,000 per mark are sufficient to deter small-time operations such as 3D. *See Sexy Fashion*, 2013 WL 3233393, at *2 (collecting cases). Finally, the value of the Coach trademarks at issue here is presumably the same as their value in these other Coach cases awarding $30,000 or less per mark. *See Pure MLK Last Stop, Inc.*, 2013 WL 5888139, at *2 (noting that value of trademark is one factor in statutory damages analysis).

However, 3D's behavior also presents several aggravating factors. As noted, 3D's repeated refusal to respond to Coach's discovery requests prevents both Coach and the Court from ascertaining the extent of its unlawful conduct. 3D should not be afforded the benefit of the doubt, therefore, as to the profits it reaped or losses Coach suffered. Unlike in *Treasure Box*, there is no indication that 3D has closed up shop since suit was filed, indicating that specific deterrence is still a factor. *See* 2014 WL 888902, at *4. The willfulness indicated by 3D's failing to defend itself and attempting to delay proceedings without substantial justification, and entering a settlement agreement with Coach that it obviously had no intention of upholding,

suggest that a comparatively larger award is necessary to provide 3D with sufficient economic incentive to respect the law and Coach's rights. 3D's willful misconduct, however, is not as egregious as the *Fashion Paradise* defendant that persisted in its trademark violations even after an initial, expensive determination of its wrongdoing. 2012 WL 194092, at *8 & n.3. Thus, while the similarity of operational scale and mitigating circumstances suggest that the damages range of the Coach cases discussed in *Treasure Box* should apply here, aggravating factors indicate that an award in the higher end of that range, although not as costly as in *Fashion Paradise*, is necessary. The Court concludes that valuing each counterfeit Coach mark at $20,000 is appropriate. Accordingly, Coach is awarded a total of $80,000 in statutory damages pursuant to 15 U.S.C. § 1117(c)(2), for which Defendants 3D Designers Inspirations and Mazhar Nadeem are jointly and severally liable.

### A. Injunctive Relief

Turning to Coach's request for an injunction pursuant to 15 U.S.C. § 1116, the Court finds that the requisite elements are met. *See e360 Insight*, 500 F.3d at 604 (describing factors for equitable relief). As for irreparable injury and the inadequacy or legal remedies, injuries incurred by trademark infringement, which Coach has established here, "are by their very nature irreparable and not susceptible of adequate measurement for remedy at law." *Processed Plastic Co. v. Warner Commc'ns, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982) (citing *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1024 (7th Cir. 1979)). This readiness to find irreparable injury is due in part to the fact that "[t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods." *Ideal Indus.*, 612 F.2d at 1026.

The balance of hardships also weighs in favor of granting Coach an injunction. If 3D's trademark infringement continues, Coach will lose potential profits and run the risk that consumers come to associate the avowed inferiority of 3D's counterfeit-marked wares with Coach's name, decreasing the consumer demand and good will Coach has built up at great expense. While a permanent injunction may harm 3D's profits if it is forced to discontinue its Coach product line, it never had a legal right to profit from such counterfeiting. Further, if these products are essential to its business, 3D can negotiate a retailer agreement with Coach or a comparable luxury manufacturer to sell such merchandise lawfully. Finally, such an injunction will not only not harm the public interest, but benefit the consuming public by eliminating deception as to the source and quality of products they buy from 3D and other potential Coach trademark counterfeiters deterred by this order.

Accordingly, the Court grants Coach's request for injunctive relief. A permanent injunction is hereby entered pursuant to Fed. R. Civ. P. 65, forever enjoining Defendants 3D Designers Inspirations and Mazhar Nadeem, their respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from:

1. Manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any products which bear the Coach Trademarks and/or the Coach Design Elements, or any other mark substantially similar or confusing thereto, including, without limitation, the infringing products identified in this Order, and engaging in any other activity constituting an infringement of any of Coach's rights in the Coach Trademarks;

2. Engaging in any other activity constituting unfair competition with Coach, or acts and practices that deceive consumers, the public, and/or trade, including, without limitation, the use of designations associated with Coach; or,

3. Engaging in any other activity that will cause the distinctiveness of the Coach Trademarks to be diluted.

## CONCLUSION

Plaintiffs' Motion for Default Judgment, ECF No. 43, is GRANTED. The Court finds that Defendants have intentionally used counterfeit trademarks, as defined in 15 U.S.C. § 1116(d)(1)(B)(ii), in the sale of goods in violation 15 U.S.C. § 1114(1)(a). Plaintiffs are awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) and a permanent injunction against Defendants as described herein. The Clerk is directed to enter judgment in the amount of $80,000 against Defendants 3D Designers Inspirations and Mazhar Nadeem, jointly and severally, and close the case.

Entered this 29th day of September, 2014.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE